478 F.2d 300
 Annie J. BEATY, Individually and as next friend of Franklin
T. Beaty and Tracy A. Beaty, minors,
Plaintiffs-Appellees-Cross-Appellants,
v.
Caspar W. WEINBERGER, Secretary of Health, Education and
Welfare, Defendant-Appellant-Cross-Appellee.
 No. 72-1356.
 United States Court of Appeals,
Fifth Circuit.
 April 23, 1973.
 
 John W. Stokes, Jr., U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., Stanton Koppel, Civil Div., Morton Hollander, Chief, Appellate Sec., Kathryn H. Baldwin, Civil Div., Dept. of Justice, Washington, D. C., for appellant.
 Kenneth G. Levin, Atlanta, Ga., for appellees.
 Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This action was brought under Section 205(g) of the Social Security Act, 42 U.S.C.A. Sec. 405(g), for review of a final decision of the Secretary of Health, Education and Welfare, denying the claim of Annie J. Beaty, on behalf of her two illegitimate children, Franklin and Tracy, for children's insurance benefits. The claim was based on the social security earnings record of J. B. Bryant, a disabled worker conceded by the Secretary to be the children's natural father. Benefits were denied the children on the basis of the Secretary's finding that neither had been dependent upon Bryant at the time his period of disability began, a prerequisite to recovery by illegitimate children under the relevant provisions of the Act. Upon review the district court held that the record would not support the Secretary's finding of non-dependency as to one of the children, Franklin, but upheld the Secretary's determination with regard to the other child, Tracy, who had been born after the onset of Bryant's disability. We affirm in part and reverse in part.
 
 
 2
 This claim for insurance benefits is governed by Section 202(d) of the Act, 42 U.S.C.A. Sec. 402(d), which in pertinent part provides that "Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits" who "has filed application for child's insurance benefits," and "was dependent upon such individual-if such individual is living, at the time such application was filed . . . shall be entitled to a child's insurance benefit. . . ."
 
 
 3
 Section 216(e) of the Act, 42 U.S.C.A. Sec. 416(e), provides that the term "child" means the child or legally adopted child of an individual. However, in order to be eligible for social security benefits the child must qualify under one of the criteria set forth in sections 216(h)(2) or 216(h)(3) of the Act, 42 U.S.C.A. Sec. 416(h)(2) and Sec. 416(h)(3). Though we treat of these statutes in greater detail below, it is sufficient for our purposes here to note that in order to be deemed eligible for the insurance benefits which they seek, the two illegitimate children in this case were obliged to meet the requirements of 42 U.S.C.A. Sec. 416(h)(3)(B)(ii) which provides for the recovery of benefits where "such insured individual is shown by evidence satisfactory to the Secretary to be the father of the applicant and was living with or contributing to the support of that applicant at the time such period of disability began."
 
 
 4
 Turning to the salient facts of this case, we note the following: On September 2, 1969, Annie J. Beaty, the mother of the two illegitimate children of J. B. Bryant, applied for insurance benefits in behalf of the children based on Bryant's earnings record. On the same day Bryant applied for disability insurance benefits and in a separate proceeding the Social Security Administration determined that Bryant had been under a disability, paranoid schizophrenia, since March 10, 1961 and awarded him benefits retroactive to September, 1968 pursuant to Section 223(b) of the Act, 42 U.S.C.A. Sec. 423(b). Insurance benefits were denied to the children, however, on the grounds that, although Franklin and Tracy were Bryant's natural children, Bryant had not been contributing to their support at the time his disability began in March of 1961.[1] The hearing examiner concluded that Tracy, who had been born in 1966, could not possibly have been receiving support from Bryant, as required by statute, at the time Bryant's period of disability began in 1961. As to Franklin, who was born in 1960, and thus was not, because of date of birth, barred by the statutory exclusion which deprived Tracy of insurance benefits, the examiner concluded that the "reliable, probative, and substantial evidence of record" did not establish the existence of support payments from Bryant before the onset of his disability. This determination became the final decision of the Secretary on December 31, 1970, and claimant brought this action in the district court for review.
 
 
 5
 As noted, the district court reversed the determination of the Secretary with regard to Franklin's claim, but affirmed as to the denial of benefits to Tracy. In its present posture the case involves two distinct issues. Raised on direct appeal by the Secretary is the issue with regard to Franklin's claim as to whether there was substantial evidence in the record to support the Secretary's findings that Bryant had not been contributing to the child's support at the time of the onset of his disability. As to the denial of benefits to Tracy, which is the subject of Ms. Beaty's cross-appeal, the constitutional issue is raised: whether Section 416(h)(3)(B)(ii), which excludes the possibility that Tracy, born after his father's period of disability commenced, could ever receive child's insurance benefits on account of such disability constitutes a denial of equal protection to Tracy.
 
 
 6
 We deal initially with Franklin's claim. Before the Social Security hearing examiner, whose findings of fact were accepted in toto by the Secretary, appellant Beaty testified that from about the time of Franklin's birth in August, 1960, Bryant contributed approximately $10 twice each month for the child's support.[2] However, Bryant's social security earnings record for 1960 disclosed income of only $331 and for 1961 of $426. In view of this fact the examiner found it unlikely that with such minimal income Bryant would have been contributing $20 per month to the support of his illegitimate child. This conclusion was based on the presupposition that the income of $331 in 1960 and of $426 in 1961 had been evenly spread over the four quarters of each of those calendar years. In point of fact Bryant's income of $331 during 1960 had been received in the last three quarters of that year and his reported income of $426 during 1961 was all received in the first quarter. It is to be noted that Franklin was born during the third quarter of 1960. Bryant, of course, was subsequently determined to have been disabled as of March 10, 1961, and thus, for Franklin to be eligible for insurance benefits it was necessary for him to prove only that his father had been contributing to his support prior to that time. In the perspective from which we view Bryant's earnings record for 1960 and 1961 it does not seem so unlikely as the examiner concluded that Bryant could not have contributed $20 monthly to Franklin's support during the last four months of 1960 and certainly not unlikely that out of $426 earned during the first quarter of 1961 Bryant could not have contributed $20 per month to the child's support-a total of $60-until the onset of his disability in March of that year. Plainly Bryant's income for the months of January, February, and March, 1961 was much more than adequate for Bryant to have been making the $20 per month payments which Ms. Beaty claimed he had made.
 
 
 7
 A second basis which the government posits for denying Franklin's claim is the putative conflict between Ms. Beaty's testimony at the hearing and a prior written statement signed by her and considered along with the case. In filing her claim Ms. Beaty signed a statement to the effect that "Franklin Tony Beaty and Tracy A. Beaty are my children by J. B. Bryant. We have never lived together and he has not supported the children since 1957. The VA advised us to go to the court and file an acknowledgment of paternity and support agreement before we filed with the VA." This statement had been written out by a caseworker, later identified as Helen Wilson, who also prepared a statement for J. B. Bryant (which he signed) which said in part "Franklin Tony Beaty and Tracy Al Beaty are my children by Ms. Annie Jewel Beaty. I have never lived with her or the children and have not contributed to their support since 1957."
 
 
 8
 Since the first of these two children was born in August, 1960, and the second in 1966, it is plain that these statements could not mean what they purport to say. One may speculate as to whether the statements were meant to refer to 1967 or some other date, but in any event it is clear that the reference to 1957 was a scrivener's error. We note that the statements were not sworn to and, of course, neither was in the handwriting of the affiant, but rather had been written out by the same case worker.[3]
 
 
 9
 In view of these circumstances we think that Ms. Beaty's sworn testimony at the hearing, to the effect that Bryant had paid her approximately $10 every 2 weeks after the first child was born, together with Bryant's affidavit to substantially the same effect, would have to prevail on the grounds that there was no substantial evidence on the record to support the hearing examiner's findings that Bryant had not contributed to Franklin's support prior to March 10, 1961. We, therefore, conclude that the district court's determination in this respect was correct.
 
 
 10
 We turn then to the equal protection issue raised by Ms. Beaty on cross-appeal concerning the denial of benefits to her son Tracy. The issue arises within the framework of the following statutory scheme for awarding children's insurance benefits. As noted, the entitling provision is 42 U.S.C.A. Sec. 402(d)(1). In pertinent part it provides for insurance benefits to every child, as hereinafter defined, of a fully-insured individual himself entitled to disability benefits where such child has filed application for benefits and was dependent on the insured individual, if living, at the time such application was filed. In order to be eligible for benefits, however, the applicant must be a "child" or deemed a "child" within the meaning of 42 U.S.C. A. Sec. 416(h)(2)(A) or (B) or Sec. 416(h) (3)(B), quoted in full in the margin.[4]
 
 
 11
 Briefly, Sec. 416(h)(2)(A) provides that in determining whether an applicant is the "child" of an insured individual the Secretary shall apply "such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled" at the time application is made. Under Sec. 416(h)(2)(B) an applicant who does not meet the above requirement, but was the product of a purported marriage which "but for a legal impediment . . . would have been a valid marriage" is deemed to be a "child" of the insured individual for purposes of eligibility for insurance benefits.[5] Finally, Sec. 416(h)(3)(B), which was added to the Act by amendment in 1965, provides that an otherwise illegitimate child shall be deemed to be the "child" of an insured individual for purposes of Sec. 402 benefits where, with additional provisos not here relevant,[6] "such insured individual is shown by evidence satisfactory to the Secretary to be the father of the applicant and was living with or contributing to the support of that applicant at the time such [the father's] period of disability began." 42 U.S.C.A. Sec. 416(h)(3)(B)(ii) (Emphasis added).
 
 
 12
 Cross-appellant concedes that Tracy does not fall within any of the categories of eligibility listed above. Under Georgia law, applicable here, a child in Tracy's position does not under the intestacy laws inherit from his natural father, as provided in Sec. 416(h)(2)(A), nor was there a purported marriage here which might qualify Tracy under Sec. 416(h)(2)(B). Additionally since Tracy was born nearly five years after the commencement of his father's disability he cannot qualify under Sec. 416(h)(3)(B) even though, as Beaty contends, Bryant, the admitted father, made and continued to make contributions to Tracy's support following the child's birth in 1966, long prior to the filing of any social security claim either for the father or the children.
 
 
 13
 For children such as Tracy, then, the reality of support payments from the father in no way affects their ineligibility for insurance benefits, since, under Sec. 416(h)(3)(B), illegitimate children, in order to be eligible for benefits, must have been receiving support from the putative father at the time his disability commenced. This treatment of illegitimate, post-disability children contrasts with the treatment afforded h(2) children born after the onset of their father's disability. Under Sec. 402(d)(1) these children may establish their dependency on their fathers, thus making them eligible for benefits, at the time their applications for benefits are filed. Moreover, as more fully explicated hereinafter, there is a statutory presumption in Sec. 402(d)(3) that h(2) children are dependent, thus obviating the need for any proof in that respect. The net effect of this statutory scheme is that while post-disability illegitimate children are ipso facto ineligible for benefits, their post-disability peers, who qualify under Sec. 416(h)(2), will almost automatically be eligible.[7] It is this disparity in treatment which Ms. Beaty contends constitutes an invidious discrimination in violation of the Due Process Clause of the Fifth Amendment.
 
 
 14
 In assessing this contention we start with the proposition that the constitutional test to be applied in these circumstances is whether the classification set up by Congress has a rational basis, Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). The Secretary argues that this rather unexacting standard has in fact been met. He notes that the purpose of the children's insurance provisions in the Social Security Act is to replace the support lost by a child when his father dies, retires, or becomes disabled, and that Congress was of the view that children with inheritance rights under state law, or whose parents had undergone a formal marriage ceremony were more likely to have received support from their parents than other classes of children. Thus it was that, in broadening the coverage of the Act in 1965 by including children described by Sec. 416(h)(3), Congress required that children falling within this class prove that they were likely to be or were in fact being supported by the insured parent. However, with respect to children born after the onset of their parent's disability Congress was faced with the problem of devising tests by which fabricated claims could be excluded since, the Secretary avers, the "risk that a claimant is fabricating the evidence of parentage or support is greater when the child is not born until after the wage-earner has become entitled to benefits." Thus, since any test which might be devised for weeding out fraudulent claims would involve additional administrative burdens, Congress might reasonably deny benefits to this class of children who are deemed less likely in any event to have lost support by a wage-earner's disability.
 
 
 15
 It is doubtless true, as the Secretary suggests, that children's benefits under the Act are theoretically conditioned on the loss of support from a disabled parent. In point of fact, however, so-called legitimate children have ordinarily been eligible for benefits regardless of whether the insured parent lives with them or contributes to their support. Section 402(d)(3) of the Act provides in effect that a legitimate child is presumed to be dependent on the wage-earner unless the child has been adopted by some other individual and the wage-earner no longer contributes to that child's support.[8] Of course, the class of children deemed to be legitimate for eligibility purposes (though technically they are illegitimate) has been broadened by amendment to include children described by Sec. 416(h)(2)(B) and (h)(3)(B), but of all eligible children only those covered under Sec. 416(h)(3)(B)(ii) are required to prove actual support and this only at the time the insured parent's period of disability began and not thereafter.
 
 
 16
 The net effect of this statutory framework is that the bulk of those children who meet the eligibility criteria of Sec. 416(h)(2) or (3)(B) would be entitled to insurance benefits on the account of a disabled parent regardless of whether they are being supported by that parent, whereas illegitimate children in Tracy's class cannot receive benefits even though able to prove both parentage and support at any really relevant time.[9] The Secretary seeks to rationalize this anomalous circumstance on the grounds that the classification is an administrative device for obviating the risk that claimants like Tracy will fabricate evidence of parentage and support. We think, however, that such a rationale will not withstand constitutional scrutiny.
 
 
 17
 We do not here dispute the Secretary's underlying premise that because illegitimate children are less likely to be supported by their fathers than h(2) children-a proposition which we are inclined to accept as true-the former might be required to establish to the satisfaction of the Secretary the entitling facts of parentage and support.[10] Thus, it would doubtless be appropriate for Congress to require that post-disability illegitimate children prove those facts. It does not follow, however, that the entire class may be excluded from coverage simply because of a postulated difficulty of proof. This is what happens now as to all post-disability children who do not meet the h(2) requirements.
 
 
 18
 The starting point for our analysis is with the companion cases of Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1967) and Glona v. American Guarantee Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1967). What is significant about these cases is the Court's implicit, if not explicit, disavowal of the notion that difficulties of proof are a sufficient, or indeed rational, basis for discriminating against illegitimates. In Glona, which involved the question whether a mother should be entitled to recover for the alleged wrongful death of her illegitimate child, the Court said, "Opening the courts to suits of this kind may conceivably be a temptation to some to assert motherhood fraudulently. That problem, however, concerns burden of proof. Where the claimant is plainly the mother, the State denies equal protection of the laws to withhold relief merely because the child, wrongfully killed, was born to her out of wedlock." 391 U.S. at 76, 88 S.Ct. at 1517 (emphasis added). Plainly, the problem of proving parentage was viewed as a procedural matter which of itself was not sufficient justification for the State to formulate classifications between legitimates and illegitimates based upon it.
 
 
 19
 Of course, Levy and Glona both involved the mother-child relationship and not, as here, the relation between father and child. That the same rule should obtain in both instances, however, was subsequently decided by the Court in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). In that case the issue involved was "the right of dependent unacknowledged, illegitimate children to recover under Louisiana workmen's compensation laws benefits for the death of their natural father on an equal footing with his dependent legitimate children," 406 U.S. at 165, 92 S.Ct. at 1401. The Court held that the denial of equal recovery rights to the former constituted a violation of equal protection. In discussing the problems of proof, which the State apparently asserted as a basis for discriminating between the two classes of children, the Court had this to say:
 
 
 20
 "[W]e are mindful that States have frequently drawn arbitrary lines in workmen's compensation and wrongful death statutes to facilitate potentially difficult problems of proof. Nothing in our decision would impose on state court systems a greater burden in this regard. By limiting recovery to dependents of the deceased, Louisiana substantially lessens the possible problems of locating illegitimate children and of determining uncertain claims of parenthood. Our decision fully respects Louisiana's choice on this matter. It will not expand claimants for workmen's compensation beyond those in a direct blood and dependency relationship with the deceased and avoids altogether diffuse questions of affection and affinity which pose difficult probative problems. Our ruling requires equality of treatment between two classes of persons the genuineness of whose claims the State might in any event be required to determine." 406 U.S. at 175, 92 S.Ct. at 1406 (emphasis added).
 
 
 21
 Clearly the Court did not believe that proving dependency and parentage, when proof of both was necessarily a prerequisite to recovery, presented difficulties sufficient for the State to justify excluding a class of illegitimates from coverage under the workmen's compensation laws at issue. And, the Court indicated that notwithstanding difficulties in proof, the State might in any event be obliged to determine the genuineness of the claims of illegitimate children.
 
 
 22
 This principle was reaffirmed in Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) in which the Court was confronted with the question whether a State could grant legitimate children a judicially enforceable right to support from their fathers and deny that right to illegitimate children. While recognizing "the lurking problems with respect to proof of paternity" the Court noted, "those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination."
 
 
 23
 Moreover, in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Court rejected the suggestion that prevention of fraud might constitute a rational basis for a state to impose a one year residency requirement on individuals seeking welfare assistance. The Court said, "[I]t is unreasonable to accomplish this objective by the blunderbuss method of denying assistance to all indigent newcomers for an entire year." 394 U.S. at 637, 89 S.Ct. at 1333.[11] Though the case was decided in terms of compelling state interest, it was noted that "even under traditional equal protection tests a classification of welfare applicants according to whether they have lived in the State for one year would seem irrational and unconstitutional." 394 U.S. at 638, 89 S.Ct. at 1333.
 
 
 24
 We conclude, therefore, that the classification at issue,[12] which works a total exclusion of claims by a class of illegitimate children, some of whose claims would be demonstrably valid, does not pass constitutional muster. It is plain that all of the children affected by this classification are illegitimate-as contrasted to the treatment afforded legitimate children who, as noted, are almost always eligible for benefits. The sole justification offered for this difference in treatment is that there may reasonably be supposed to be a greater likelihood of spurious claims from this group than from others. Yet, as we have indicated, this justification will not insulate an otherwise invidious discrimination. We thus hold that Sec. 416(h)(3)(B)(ii) is constitutionally infirm insofar as it requires a showing of paternity and dependency at the time the insured parent's period of disability began. While proof of parentage and support may be required of post-disability, illegitimate children they may not as a class be excluded from coverage of the Act simply because they were born after the onset of the insured parent's disability.
 
 
 25
 We are not unmindful that a three-judge court in Illinois recently held to the contrary. Jimenez v. Richardson, D.C.N.D.Ill., 353 F.Supp. 1356, decided January 30, 1973. That court did not consider, however, that, even though there might exist the possibility of spurious claims by post-disability, illegitimate children, that justification alone, as a constitutional matter, will not support the classification. We agree with Judge Fairchild's dissenting opinion in which he noted that the Supreme Court [406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768] has made it clear "that once dependency was established, the Constitution required that all dependents-whether legitimate or illegitimate-must be treated equally," and that while "the need to guard against fraudulent claims is surely a valid legislative goal," the total exclusion of a class for claims would not be a "reasonable means of achieving that goal."
 
 
 26
 Turning to the facts of the case before us we note that because Tracy was deemed ineligible for insurance benefits owing to the lateness of his birth, the Secretary made no finding as to whether Bryant was actually contributing to the child's support at the time application for benefits was made. It is therefore necessary to remand the case for a factual determination with regard to this question.
 
 
 27
 We have considered Ms. Beaty's claim that the one year retroactivity provision in the Act should not apply to Bryant and find the contention to be without merit.
 
 
 28
 The district court's determination with respect to the issue raised on direct appeal is affirmed. With respect to the issues raised on cross-appeal, the judgment is affirmed in part and reversed in part and the case is remanded to the district court with directions to remand to the Secretary for a factual hearing in accordance with this opinion.
 
 
 29
 SIMPSON, Circuit Judge (concurring in part and dissenting in part):
 
 
 30
 I concur fully in the majority's affirmance of the district court's treatment of the claim asserted for the older child of Mrs. Beaty, Franklin: reversal of the Secretary's determination that "reliable, probative and substantial evidence of record" did not establish the existence of support payments for Franklin's benefit by Bryant prior to the onset of Bryant's disability in 1961.
 
 
 31
 But I respectfully dissent from the remaining portion of the opinion which sustains Mrs. Beaty's cross-appeal and reverses the district court's approval of the Secretary's denial of benefits to the younger son, Tracy, born in 1966, five years subsequent to the onset of Bryant's disability in 1961.
 
 
 32
 I would hold that the discrepancy in treatment between h(2) and h(3)[1] post-disability illegitimate children is rationally related to achieving legitimate Congressional goals, and that by passing this rational basis test the statutory scheme meets constitutional standards of equal protection under the Fifth Amendment Due Process Clause. Richardson v. Belcher, 1971, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231, 235; Dandridge v. Williams, 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491. We deal here with a federal statute which does not directly involve the Fourteenth Amendment's Equal Protection Clause but it is clear that a classification which meets the Dandridge equal protection test is necessarily consistent with the due process requirement of the Fifth Amendment. Richardson v. Belcher, supra; Shapiro v. Thompson, 1969, 394 U.S. 618, 641-642, 89 S.Ct. 1322, 1335, 22 L.Ed.2d 600, 619; Bolling v. Sharpe, 1954, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884.
 
 
 33
 In upholding the constitutionality of Title 42, U.S.C. Sec. 416(h)(3)(B), I would follow the majority opinion of the three-judge statutory court in Jimenez et al. v. Richardson, 1973, N.D.Ill., 353 F.Supp. 1356 rather than follow Judge Fairchild's dissent as the majority does. See also Watts v. Veneman, D.C.Cir. 1973, 476 F.2d 529 and its holding in a similar context:
 
 
 34
 "The entire thrust of the Social Security laws relevant to dependents is to provide benefits to those who were most likely to have relied upon the deceased for their support. In light of this overriding purpose, it is well-established that Social Security benefits are not accrued property rights. One's ability to receive benefits is not dependent solely upon the biological relationship between the decedent and his children, but also upon the probability that the children were dependent for support upon the deceased.
 
 
 35
 Congress in enacting the Social Security laws made various judgments about the probability that children are dependent. For example, it seems more logical that illegitimates would be dependent upon their father if he has recognized them, or if in fact he is contributing to their support. The incorporation of a state's intestacy laws for purposes of determining eligibility is in furtherance of this scheme. If an illegitimate child may not inherit, then the child's support following the father's death is less likely to be dependent upon what was received upon the deceased's death than if the child could receive property following the wage earner's demise.
 
 
 36
 It must be remembered that the Social Security laws do not exclude all illegitimates from eligibility for payments. In this case, for example, the children of decedent Jones were and are fully eligible for support. Rather, the laws are reasonably designed to disqualify a class of illegitimates who are less likely, as a class, to possess the requisite biological or legal relationship to or economic dependency on the wage earner." (Footnotes omitted)
 
 
 
 [1]
 The record is clear that Bryant did not live with the children. Thus, in order for the children to be eligible for benefits under Sec. 416(h)(3)(B)(ii) it was necessary to prove that Bryant was contributing to the support of the children at the time his period of disability began
 
 
 [2]
 Ms. Beaty's sworn testimony was supported by an affidavit submitted by Bryant which stated that he had made periodic payments to Ms. Beaty for the support of each of the children. However, the amount and frequency of such payments were not indicated
 
 
 [3]
 The other evidence of record which might have led the examiner to reject Ms. Beaty's sworn testimony at the hearing, such as a statement made to the Fulton County Legal Aid Society to the effect that she had not received a payment from Bryant, is at best ambiguous. Since Ms. Beaty did not seek such legal assistance until 1963 and since she stated at the hearing that her reason for doing so was because Bryant's payments were "kind of slow" and further since the reference to payments from Bryant made to the Legal Aid Society could as easily be interpreted as referring to a stoppage of payments as to the fact that Bryant had never made any payments, we do not consider this evidence as being of any particular significance
 
 
 [4]
 "Sec. 416(h)(2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such
 (B) If an applicant is a son or daughter of a fully or currently insured individual but is not (and is not deemed to be) the child of such insured individual under subparagraph (A), such applicant shall nevertheless be deemed to be the child of such insured individual if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of paragraph (1)(B), would have been a valid marriage.
 (3) An applicant who is the son or daughter of a fully or currently insured individual but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if: (B) in the case of an insured individual entitled to disability insurance benefits, or who was entitled to such benefits in the month preceding the first month for which he was entitled to old-age insurance benefits-
 (i) such insured individual-
 (I) has acknowledged in writing that the applicant is his son or daughter,
 (II) has been decreed by a court to be the father of the applicant, or
 (III) has been ordered by a court to contribute to the support of the applicant because the applicant is his son or daughter,
 and such acknowledgment, court decree, or court order was made before such insured individual's most recent period of disability began; or
 (ii) such insured individual is shown by evidence satisfactory to the Secretary to be the father of the applicant and was living with or contributing to the support of that applicant at the time such period of disability began;"
 
 
 [5]
 Children who meet the requirements of either Sec. 416(h)(2)(A) or Sec. 416(h)(2) (B) will hereinafter be referred to as "h(2) children." Though such children are sometimes loosely referred to as "legitimate" children, the appellation is not entirely accurate and thus, for purposes of clarity we will use the statutory designation
 
 
 [6]
 See 42 U.S.C.A. Sec. 416(h)(3)(B)(i), supra n. 4
 
 
 [7]
 We use the term "almost automatically" because a close reading of the statute indicates that there are special circumstances set out which would exclude coverage for even an h(2) child. It is apparent that statistically this class would be negligible
 
 
 [8]
 Sec. 402(d)(3) provides "A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and-
 (A) such child is neither the legitimate nor adopted child of such individual, or
 (B) such child has been adopted by some other individual.
 For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual."
 
 
 [9]
 In support of his argument the Secretary has introduced statistics from a study of absent father families by the Department of Health, Education and Welfare which demonstrate that where the father was or had been married to the mother 18.3% of the families received contributions from the father whereas in families where the father had never been married to the mother only 10.2% received such contributions. It can, with equal accuracy, be said that of the former group fully 82% of such families did not receive support contributions from the father, yet the children would nonetheless be eligible for insurance benefits under Sec. 402(d). It also appears, by reversing the figures in this manner, that only a slightly greater percentage of families in the latter group did not receive contributions from the father, there being a difference of just slightly more than 8%
 
 
 [10]
 It has been suggested that in the wake of Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) even this requirement might not hold. See Semmel, Social Security Benefits for Illegitimate Children after Levy v. Louisiana, 19 Buf.L.Rev. 289 (1970), in which the author noted, "If after Levy, such illegitimates fall within the definition of 'child,' may they still be denied benefits because of non-dependency when others receive them without regard to dependency? It is difficult to find a rational basis for such a distinction other than administrative difficulties of ascertaining paternity, a reason which apparently lacks constitutional weight." at 297
 
 
 [11]
 The opinion indicates that under the circumstances welfare fraud could have been obviated by the simple expedient of sending a letter or telegram to pertinent officials. While we do not suggest that fatherhood can so easily be established, nonetheless the problems of proof, where the alleged father is living, are not nearly so difficult as the Secretary envisions, and, of course, the burden of proof lies with the claimant. For a discussion of methods of establishing parentage, see Note, Illegitimacy: Equal Protection and How to Enjoy It, 4 Ga.L.Rev. 383 (1970)
 
 
 [12]
 We confine our decision in this case to Sec. 416(h)(3)(B)(ii), which is the provision under which Tracy would have come, but for the lateness of his birth. We express no opinion as to the eligibility criteria set forth in Sec. 416(h)(3)(B)(i) or elsewhere in the Act
 
 
 [1]
 For simplicity I adopt the majority opinion's shorthand nomenclature