Gerald E. GENTRY

v.

The UNITED STATES.

No. 312–74.

United States Court of Claims.

April 1, 1977.

---

Richard A. Weinstock, Ventura, Cal., attorney of record, for plaintiff.

Donnie Hoover, Washington, D.C. with whom was Asst. Atty. Gen. Barbara A. Babcock, Washington, D.C., for defendant.

Before SKELTON, Judge Presiding, and NICHOLS and BENNETT, Judges.

## ORDER

This case comes before the court on defendant's motion, filed January 18, 1977, for rehearing *en banc* pursuant to Rules 7(d) and 151. Upon consideration thereof, together with plaintiff's response in opposition thereto, without oral argument, by the seven active judges of the court (Chief Judge Cowen then sitting) as to the suggestion for rehearing *en banc* under Rule 7(d), the suggestion is denied. The case has further been considered by the panel listed above as to the motion for rehearing under Rule 151.

Defendant has raised two points in its brief accompanying its motion for rehearing which we find it appropriate to answer. First, defendant argues that the Supreme Court's decision in *Mathews v. de Castro,* 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (decided December 13, 1976), announced one month after this court's opinion in the present case, is contrary to our previous opinion. In *de Castro* the Court sustained against constitutional challenge a provision of the Social Security Act which extends "wife's insurance benefits" to a married woman under age 62 who has a minor or dependent child in her care and whose husband retires or becomes disabled, but denies such benefits to a divorced woman under 62 having such a child in her care whose former husband retires or becomes disabled. The Court reasoned:

* * * Congress could have rationally assumed that divorced husbands and wives depend less on each other for financial and other support than do couples who stay married. * * * [D]ivorced couples typically live separate lives. It was not irrational for Congress to recognize this basic fact * * *. 429 U.S. p. 187, 97 S.Ct. p. 436.

Defendant says that if Congress could constitutionally presume divorced wives less dependent on their former spouses than married wives on their present spouses, thus conferring benefits on the latter group while withholding them from the former, then Congress could also validly presume that illegitimate children who do not live with their annuitant fathers are less dependent on them than are those children who live with them, with the same results for the distribution of benefits. Thus, according to defendant, *de Castro* controls the present case, and defeats a recovery for plaintiff.

We think that defendant's analogy to *de Castro* is inapt. *de Castro* involved a distinction based on marital status, rather than birth status. *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), which like the case at bar dealt with statutory distinctions implicating birth status, is much closer factually to this case. *de Castro,* which did not even mention *Jimenez,* is not rightly viewed as overruling the latter. *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), decided just 6 months before *de Castro,* implicitly reaffirmed the validity of *Jimenez* when it distinguished its situation, where an illegitimate child was accorded the opportunity to establish dependency, from that which proved critical and fatal to the statute in *Jimenez,* where one subclass of illegitimates was forbidden to establish the dependency conclusively presumed to exist in others. We said in our previous opinion that, for all that appeared on the record before us, the child excluded from participation in survivor's benefits (such as plaintiff) was in the same situation as the included child. Our statement (546 F.2d at page 352) was practically a quote from *Jimenez, supra,* 417 U.S. at 637, 94 S.Ct. at 2502: " * * * for all that is shown in this record, the two

subclasses of illegitimates stand on equal footing * * *; hence to conclusively deny one subclass benefits presumptively available to the other denies the former the equal protection of the laws * * *." There is no reason to believe that this is not still the law.

The Court in *de Castro* obviously did not view the class of divorced women as standing on the same footing with married women. However, as in *Jimenez,* defendant has shown us nothing to justify a conclusion that the members of the two subclasses in the present case, distinguished by statutory criteria implicating birth status, stand on different footing. While Congress and the Court might find from common experience that divorced wives are usually less dependent on former husbands than married wives are on their spouses, the application of such experience and reasoning to nonresident illegitimate children is by no means apparent. As plaintiff notes in its brief opposing rehearing, alimony for the divorced wife is frequently a matter for equitable relief, not always awarded, sustaining the view that divorced wives' dependence on the former husband is not the unwavering rule, but that probably the contrary is true. Child support, on the other hand, including support for the illegitimate child, is almost universally a legal requirement, attesting to the questionable validity of any assumption that some subset of illegitimates, those not residing with the annuitant, is invariably beyond the realm of financial support. The rationality of the legislative presumption of financial independence in *de Castro* is supported by the reasoning that the typical divorced wife can (not necessarily does) earn her own living, though this can hardly be carried over to the case of the illegitimate minor. We are not prepared to abandon our previous reliance on the Court's reasoning in cases involving discriminations against illegitimates in order to embrace defendant's invitation to rest our ruling on a factually inapt case involving quite a different variety of statutory distinction. We remain mindful of the Court's teaching in

*Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768 (1972), that legislative distinctions implicating the illegitimate status of birth are subject to constitutional review in light of the admonition that "visiting this [society's] condemnation [of irresponsible liaisons beyond the bonds of marriage] on the head of an infant is illogical and unjust."

An independent reason why *de Castro* does not control the result in this case is that, as we said in the earlier opinion, the purpose of the Civil Service Retirement Act, as amended, is not clearly limited to the granting of aid to financial dependents, but may well include "the extension of benefits to surviving members of the immediate family of the annuitant, without regard to dependency." 546 F.2d p. 353. *de Castro* admittedly confined its reasoning to the environment of the old age, survivor's, and disability insurance aspects of the Social Security law, which is heavily grounded in the objective of replacing earnings lost through retirement, illness, or death. Under the Civil Service annuity scheme, however, neither dependency nor partial support, presumed or proved, expressly plays a role in the distribution of benefits to survivors. Confirming our previous "speculation" that financial dependence is not the touchstone of the flow of benefits is the fact, unknown to us when the opinion was announced but recently brought to our attention, that a dependency requirement for illegitimates placed in the statute by the 1956 amendments was deleted by new legislation in 1966. Prior to 1966 the statute's definition of child included a "recognized natural child who received more than one-half of his support from and lived with" the annuitant. 5 U.S.C. § 2251(j)(2) (1964). The Act of July 18, 1966, Pub.L. 89–504, § 502, 80 Stat. 300, deleted the words "received more than one-half his support from and," with the stated purpose of eliminating "the requirement that a child be dependent upon a Federal-employee parent in order to receive a survivor annuity," in order to extend benefits to the children of a working mother. S.Rep. No. 1187, 89th

Cong., 2d Sess. (May 26, 1966), 2 U.S.Code Cong. & Ad.News pp. 2495, 2498 (1966). To the extent that this legislative action and history undermine the parties' original explanation of the annuity law as intending to aid the financial beneficiaries of the annuitant, and to the extent that they support our earlier alternate view of the statute's purpose, *de Castro* is simply inapposite to the disposition of this case.

Defendant's second point in its brief which we think it proper to address, particularly for the benefit of the Civil Service Commission on remand and of any future panel of this court which may encounter this problem on a subsequent appeal, is the contention that absent the live-with requirement, the statute cannot be rationally administered. Defendant argues that, without the live-with requirement as a guide to determining dependency, there remains no criterion in the statute by which to measure the degree of the beneficiary's financial dependence—more than one-half his support, a substantial portion of his support, or merely some part of his support provided by the annuitant—necessary to qualify him for the receipt of benefits. This argument, of course, assumes again that the annuity law's purpose is the aiding of financial dependents. Defendant contrasts this absence of criteria with the situation in *Jimenez,* where remaining provisions of the Social Security Act stated the extent of the previous support from the insured needed to qualify the beneficiary. While we acknowledge that our opinion has left this matter unresolved, speaking at times of "dependence" and at other times of "contribution to support," and also holding open the possibility that the degree of financial dependence is irrelevant to a recovery, we think that this is a problem of the parties' own making, and partly on that account one not yet ripe for resolution.

Both plaintiff and defendant argued this case to us with the assumption that aid to dependents was the prime objective of the Civil Service Retirement Act, as amended.

The original argument on neither side focused on the problem defendant now raises. Since the proper construction of the statute with respect to the degree of financial dependence required in the beneficiary was not briefed to us, and since the result of the proceedings before the Civil Service Commission, or the possibility dependence will ultimately be held irrelevant to the distribution of benefits, may obviate the need to resolve the point in question, we see no reason to modify our previous opinion at this time. Plaintiff expressed the intention of proving to a fact-finder that the annuitant supported him to some extent. If plaintiff's proof on the matter of support satisfies the Commission, there may be no call in this case to resolve the role of dependency under the annuity statute. If plaintiff and the Commission are unable to agree on the sufficiency of plaintiff's proof, or on the legal showing required to obtain benefits, the parties will have the opportunity of returning here and arguing what role, if any, the degree of dependence has to play in the distribution of survivor's benefits under the statute. Accordingly, while defendant's contention is an important one, raising a significant question for the administration of the statute, we have no need as yet to rule on it.

IT IS THEREFORE ORDERED that defendant's motion for rehearing be, and the same is hereby, denied.