# UNITED STATES *v.* CLARK, GUARDIAN

No. 78–1513.   Argued October 31, 1979—Decided February 26, 1980

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, WHITE, BLACKMUN, and STEVENS, JJ., joined. POWELL, J., filed an opinion concurring in the judgment, in which BURGER, C. J., joined, *post,* p. 34. REHNQUIST, J., filed a dissenting opinion, in which STEWART, J., joined, *post,* p. 36.

*Harriet S. Shapiro* argued the cause for the United States. With her on the briefs were *Solicitor General McCree, Acting Assistant Attorney General Schiffer,* and *Deputy Solicitor General Easterbrook.*

*Edward L. Merrigan* argued the cause and filed a brief for appellee.*

---

*\*Toby S. Edelman, Edward C. King,* and *Bruce K. Miller* filed a brief for Barbara Jenkins as *amicus curiae* urging affirmance.

Mr. Justice Marshall delivered the opinion of the Court.

This appeal presents the question whether illegitimate children of a federal civil service employee are entitled to survivors' benefits under the Civil Service Retirement Act when the children once lived with the employee in a familial relationship, but were not living with the employee at the time of his death.

I

George Isaacson and the appellee Patricia Clark lived together from 1965 through 1971 without benefit of matrimony. They had two children, Shawn and Tricia Clark, born in 1968 and 1971, respectively, and the four lived together as a family. After the appellee and Isaacson separated, the appellee filed a state-court action in Montana seeking a determination of the paternity of the children. In June 1972, the Montana court issued a decree determining that Isaacson was the natural father of the children and ordering him to contribute to their support. Isaacson provided monthly support payments up to the time of his death in 1974.

At the time of death, Isaacson was a federal employee covered by the Civil Service Retirement Act, 5 U. S. C. § 8331 et seq. The Act provides that each surviving child of a deceased federal employee is entitled to a survivors' annuity. 5 U. S. C. § 8341 (e)(1). All legitimate and adopted children under 18 years of age qualify for these benefits, but stepchildren or "recognized natural" children under 18 may recover only if they "lived with the employee . . . in a regular parent-child relationship." 5 U. S. C. § 8341 (a)(3)(A). In September 1974, the Civil Service Commission's Bureau of Retirement, Insurance, and Occupational Health denied the appellee's application for such annuities for Shawn and Tricia. The Bureau held that 5 U. S. C. § 8341 (a)(3)(A) bars recovery for otherwise qualified children born out of wedlock who, like Shawn and Tricia, were not living with the employee

at the time of his death. The Commission's Board of Appeals and Review affirmed.[1]

The appellee then filed this action in the Court of Claims on behalf of her children. She argued that 5 U. S. C. § 8341 (a)(3)(A) allows recovery where, as here, the recognized natural children had once lived with the employee in a parent-child relationship. Alternatively she contended that, if the Commission's interpretation of 5 U. S. C. § 8341 (a)(3) (A) was correct, that provision violated the equal protection component of the Due Process Clause of the Fifth Amendment because it impermissibly discriminated against illegitimate children.

The Court of Claims granted the appellee's motion for summary judgment. 218 Ct. Cl. 705, 590 F. 2d 343. Ignoring the statutory issue, the court granted relief on the authority of its earlier decision in *Gentry* v. *United States*, 212 Ct. Cl. 1, 546 F. 2d 343 (1976), rehearing denied, 212 Ct. Cl. 27, 551 F. 2d 852 (1977), which held that the "lived with" requirement of 5 U. S. C. § 8341 (a)(3)(A) unconstitutionally discriminated against illegitimate children. We postponed consideration of our jurisdiction pending hearing on the merits, 441 U. S. 960 (1979), and now affirm on the statutory ground presented to but not addressed by the Court of Claims.[2]

---

[1] On January 1, 1979, the Civil Service Commission was abolished, and the Office of Personnel Management assumed primary responsibility for the civil service retirement program. See Civil Service Reform Act of 1978, Pub. L. 95–454, 92 Stat. 1111; Reorg. Plan No. 2 of 1978, 3 CFR 323 (1979). For convenience, throughout this opinion we shall refer to the agency administering the retirement program as the Civil Service Commission.

[2] The appellee contends that this Court does not have jurisdiction to entertain this appeal. We disagree.

By an order dated January 27, 1978, the Court of Claims held that the "lived with" requirement of 5 U. S. C. § 8341 (a)(3)(A) applicable to illegitimate children violated the equal protection component of the Due Process Clause of the Fifth Amendment. The court then resolved the issue

## II

The Civil Service Retirement Act provides survivors' annuities to all legitimate children, but grants the same benefits to

of relief and entered final judgment on November 6, 1978. The Government filed its notice of appeal on December 5, 1978.

The appeal statute relied upon by the Government, 28 U. S. C. § 1252, provides:

"Any party *may* appeal to the Supreme Court from an interlocutory or final judgment, decree or order of any court of the United States . . . holding an Act of Congress unconstitutional in any civil action, suit, or proceeding to which the United States or any of its agencies, or any officer or employee thereof, as such officer or employee, is a party." (Emphasis added.)

The appellee first contends that the Government failed to file a timely notice of appeal because it did not appeal the January 27, 1978, decision on the liability issue. Section 1252 would have allowed the Government to seek review of this interlocutory order declaring a federal statute unconstitutional, but its permissive language providing that any party "may appeal . . . from an interlocutory or final judgment" plainly did not require the Government to appeal before final judgment was entered. Cf. *United States* v. *Carlo Bianchi & Co.,* 373 U. S. 709 (1963) (review of final judgment under 28 U. S. C. § 1255 entails review of any interlocutory decisions on liability); *Marconi Wireless Telegraph Co.* v. *United States,* 320 U. S. 1, 47–48 (1943) (same); *American Foreign S. S. Co.* v. *Matise,* 423 U. S. 150 (1975) (same rule when jurisdiction based on 28 U. S. C. § 1254); *Toledo Scale Co.* v. *Computing Scale Co.,* 261 U. S. 399, 418 (1923) (same).

The appellee also argues that no appeal will lie under 28 U. S. C. § 1252 because the Court of Claims did not declare an Act of Congress unconstitutional. To the contrary, a determination that the "lived with" requirement of 5 U. S. C. § 8341 (a)(3)(A) was unconstitutional was a necessary predicate to the relief the Court of Claims granted to the appellee's children, and this determination of unconstitutionality may be appealed under § 1252. *McLucas* v. *DeChamplain,* 421 U. S. 21, 30 (1975); *United States* v. *Raines,* 362 U. S. 17, 20 (1960). It is irrelevant that the Court of Claims reached this holding by relying on its earlier decision in *Gentry* v. *United States,* 212 Ct. Cl. 1, 546 F. 2d 343 (1976), rehearing denied, 212 Ct. Cl. 27, 551 F. 2d 852 (1977). An appeal under § 1252 lies for any federal-court decision declaring an Act of Congress unconstitutional in a civil action in which the United States is a party, not just for

children born out of wedlock only if they "lived with the employee . . . in a regular parent-child relationship." Such a classification based on illegitimacy is unconstitutional unless it bears "an evident and substantial relation to the particular . . . interests this statute is designed to serve." *Lalli* v. *Lalli,* 439 U. S. 259, 268 (1978) (plurality opinion); see *id.,* at 279 (BRENNAN, J., dissenting). See also *Trimble* v. *Gordon,* 430 U. S. 762, 767 (1977).[3] The Government's asserted justification for the classification—that it is an administratively convenient means of identifying children who actually were deprived of support by the employee's death—is itself open to constitutional question, since the statute does not condition benefits to legitimate children on such a showing.

It is well settled that this Court will not pass on the constitutionality of an Act of Congress if a construction of the statute is fairly possible by which the question may be avoided. *E. g., Califano* v. *Yamasaki,* 442 U. S. 682, 693 (1979); *New York City Transit Authority* v. *Beazer,* 440 U. S. 568, 582, and n. 22 (1979); *Machinists* v. *Street,* 367 U. S. 740, 749–750 (1961); *Spector Motor Service, Inc.* v. *McLaughlin,* 323 U. S. 101, 105 (1944). Where both a constitutional issue and an issue of statutory construction are raised, we are not, of course, foreclosed from considering the statutory question merely because the lower court failed to address it. *Califano* v. *Yamasaki, supra,* at 693; *University of California Regents* v. *Bakke,* 438 U. S. 265, 328 (1978)

---

the first such decision. Cf. *Garment Workers* v. *Donnelly Garment Co.,* 304 U. S. 243, 249 (1938).

[3] The lower federal courts have uniformly held that the "lived with" requirement violates the equal protection component of the Due Process Clause of the Fifth Amendment. *Gentry* v. *United States, supra; Jenkins* v. *U. S. Civil Service Comm'n,* 460 F. Supp. 611 (DC 1978); *Proctor* v. *United States,* 448 F. Supp. 418 (DC 1977) (three-judge court); *Tenny* v. *United States,* 441 F. Supp. 224 (ED Mo. 1977); *Myers* v. *Commissioners of Civil Service Comm'n,* Civ. No. 8682 (SD Ohio, Aug. 8, 1977).

(opinion of BRENNAN, WHITE, MARSHALL, and BLACKMUN, JJ.); *id.,* at 281 (opinion of POWELL, J.); *id.,* at 411–412 (opinion of STEVENS, J.). Accordingly, we turn to the statute to determine whether resolution of the constitutional question is necessary to the disposition of this case.

Shawn and Tricia Clark were denied annuities on the ground that they did not meet the statutory requirement that they "lived with the employee . . . in a regular parent-child relationship." The appellee contended that her children did meet the requirement because they had lived with the decedent as a family from their birth through 1971. If the appellee's construction of the statutory language is correct, the children are entitled to survivors' annuities and decision of the constitutional question is unnecessary. The Civil Service Commission, however, has construed the "lived with" language to require that the children be living with the employee at the time of the employee's death.

When the statutory language is considered on its face, the appellee's reading is at least as plausible as that of the Government. Shawn and Tricia had "lived with" their father, and we believe those words would not ordinarily imply a temporal limitation. Moreover, Congress has demonstrated in other social welfare legislation that it knows how to restrict the class of eligible beneficiaries to those living with an individual at a particular time.[4]

---

[4] See 45 U. S. C. § 231e (c) (1) (i) (Railroad Retirement Act benefits payable in certain circumstances to "the widow or widower of the deceased employee who was living with such employee at the time of such employee's death"); 42 U. S. C. § 416 (e) (Social Security Act in part defines legally adopted child as a person who "was at the time of such individual's death living in such individual's household"); 42 U. S. C. § 416 (h) (3) (A) (ii) (Social Security Act's definition of qualified child is met in part when "such insured individual is shown . . . to be the father of the applicant and was living with or contributing to the support of the applicant at the time such insured individual became entitled to benefits or attained age 65, whichever first occurred").

We can find nothing in the legislative history of the statute to indicate that appellee's construction of the statute is out of harmony with the congressional intent. The original enactment in 1948 made an annuity payable to "an unmarried child, including a dependent stepchild or an adopted child, under the age of eighteen years, or such unmarried child who because of physical or mental disability is incapable of self-support." Act of Feb. 28, 1948, § 11, 62 Stat. 55. The amount of the annuity depended on whether another parent survived. Although children born out of wedlock were not expressly included, the provision was seemingly broad enough to cover them.[5] The Government argues that, in granting annuities to surviving children, Congress intended to provide funds to replace support lost by the wage earner's dependents. The Government views the statutory scheme as designed to pay benefits only to those children Congress thought most likely to have been dependent on the wage earner, and to take account of the likelihood of supplementary support from the other parent. We note, however, that only stepchildren were required to show dependency.[6]

In 1956, Congress amended the definition of an entitled child to include "an unmarried child, including (1) an adopted child, and (2) a stepchild or recognized natural child who received more than one-half his support from and lived with the . . . employee in a regular parent-child relationship." Act of July 31, 1956, Title IV, § 1 (j), 70 Stat. 744.[7] For the

---

[5] See *Visor* v. *United States*, Civ. No. 9922 (2) (ED Mo., Feb. 12, 1955).

[6] By authorizing the payment of benefits to an "unmarried child who because of physical or mental disability is incapable of self-support," Act of Feb. 28, 1948, 62 Stat. 55, Congress apparently intended that, though disabled children over 18 years of age had to show they were unable to support themselves, they did not have to show they were dependent on the deceased parent.

[7] The 1956 amendments also provided that a survivors' annuity was payable to a legitimate child with a surviving parent only if the child proved that he had received more than one-half his support from the

first time children born out of wedlock were explicitly included, but their eligibility was made subject both to the "lived with" requirement and to the dependency requirement originally applicable only to stepchildren.

The legislative history is devoid of any indication whether Congress intended that annuities could be recovered by all recognized natural children who had once lived with the employee in a familial relationship, or only by such children who were living with the employee at the time of death. Nor do the congressional materials illuminate the purpose of the "lived with" requirement. The Government defends the provision as a rational indicator of both dependency and parentage. An illegitimate child who lived with the natural parent, according to this view, is both more likely to have received support from the parent and more likely to be the true issue of that parent than is any illegitimate child who lived apart from the natural parent. It seems unlikely that Congress viewed the requirement as a means of ascertaining either dependency or parentage, however, since the statute also required the child to prove both that he had received more than one-half of his support from the deceased employee and that he was the employee's "recognized natural child." Those provisions speak directly to the concerns raised by the Government, and the additional requirement that the child must have lived with the parent would therefore be superfluous regardless of whether it mandated that the child must have lived with the parent at the time of the parent's death rather than at some other time.

The Government also urges that Congress intended the "lived with" requirement to serve as a means of thwarting fraudulent claims of dependency or parentage, and to promote efficient administration by facilitating the prompt identification of eligible annuitants. It is evident from the facts

---

deceased employee. Act of July 31, 1956, amending Title IV, § 10 (d), 70 Stat. 754.

of this case, however, that the classification is not narrowly tailored as a means of furthering either goal. As we recognized in *Jimenez* v. *Weinberger*, 417 U. S. 628, 636 (1974), the prevention of fraud is a legitimate goal, but it does not necessarily follow "that the blanket and conclusive exclusion of [appellee's] subclass of illegitimates is reasonably related to the prevention of spurious claims." Thus, even if the "lived with" requirement is assumed to serve as a device to prevent fraud or to promote efficient administration, it raises serious equal protection problems that this Court must seek to avoid by adopting a saving statutory construction not at odds with fundamental legislative purposes.

In sum, the legislative history of the 1956 amendments provides no direct guidance on the purpose of the "lived with" provision or on whether it was intended to be restricted to children living with the parent at a particular time. The less restrictive construction proposed by the appellee appears fair and reasonable in light of the language, purpose, and history of the enactment, and it avoids a serious constitutional question. Before we conclude our inquiry, however, we must consider whether a 1966 amendment to the statute affected the children's right to recovery.

Congress enacted the 1966 amendments to the Act upon the request of the Executive Branch's Committee on Federal Staff Retirement Systems. One of these amendments removed the requirement that children must prove they received one-half of their support from the deceased employee in order to recover survivors' annuities. Act of July 18, 1966, Title V, § 502, 80 Stat. 300. Congress deleted the dependency requirement in order to ensure recovery for the children of female civil servants, who typically earned less than their husbands and accordingly contributed less than half of the support of their children.[8] Congress also deleted the require-

---

[8] See S. Rep. No. 1187, 89th Cong., 2d Sess., 5 (1966); The Federal Salary and Fringe Benefits Act of 1966: Hearings on H. R. 14122 before

ment of proof of dependency for stepchildren and "recognized natural" children, but retained the "lived with" requirement for those claimants. The reason for retaining the requirement was not clearly explained in the Cabinet Committee report, which simply stated:

> "Stepchildren and natural children are eligible for benefits at present only when they have been dependent on the deceased parent and living with the parent in a regular parent-child relationship. The latter requirement should be retained; but, if it is fulfilled, the benefits should be paid as for any other child, without regard to the dependency requirement." H. R. Doc. No. 402, 89th Cong., 2d Sess., 41 (1966).

The Government views the 1966 amendment as evidence that Congress intended the "lived with" requirement to serve as a convenient method of determining whether the child received support from the deceased employee. This proposition appears implausible, since in the same sentence the Committee recommended that if the "lived with" requirement were met benefits should be paid "as for any other child, without regard to the dependency requirement." The Committee's use of the word "retained" is a further indication that Congress did not intend the "lived with" provision to assume a new function previously performed by the dependency requirement. Moreover, the Government's position again unnecessarily raises the equal protection question, because legitimate children and adopted children were not required to demonstrate that they had received support from the decedent. In the absence of any persuasive evidence to the contrary, therefore, we assume that Congress' failure to alter the "lived

the Senate Committee on Post Office and Civil Service, 89th Cong., 2d Sess., 7 (1966); Joint Annual Report of the Director of the Bureau of the Budget and the Chairman of the Civil Service Commission and the Report of the Cabinet Committee on Federal Staff Retirement Systems, H. R. Doc. No. 402, 89th Cong., 2d Sess., 41 (1966).

with" requirement likewise failed to modify the purpose of that provision as envisioned by the Congress that enacted it.[9]

We conclude that the "lived with" requirement is satisfied when a recognized natural child has lived with the deceased employee in a "regular parent-child relationship," regardless of whether the child was living with the employee at the time of the employee's death. Our consideration of the language and purpose of the statute and of the available legislative history convinces us that this construction is a fair and reasonable reading of the congressional enactment.[10] Furthermore,

---

[9] Two Committees of Congress, in passing on requests for legislation by the Civil Service Commission, have referred to the "lived with" requirement as a "living with" requirement. S. Rep. No. 92–527, p. 1 (1971); S. Rep. No. 1070, 89th Cong., 2d Sess., 1 (1966). See also H. R. Rep. No. 92–811, p. 3 (1972); H. R. Rep. No. 33, 89th Cong., 1st Sess., 3 (1965). We read the Committees' statements as nothing more than acknowledgments of the Commission's interpretation of the requirement, which was made known to each Committee by letters from the Commission. S. Rep. No. 92–527, *supra,* at 2–3; S. Rep. No. 1070, *supra,* at 3–4. In any event, the views of some Congressmen as to the construction of a statute adopted years before by another Congress have " 'very little, if any, significance.' " *United States* v. *Southwestern Cable Co.,* 392 U. S. 157, 170 (1968) (quoting *Rainwater* v. *United States,* 356 U. S. 590, 593 (1958)).

The 1966 recommendation of the Cabinet Committee on Federal Staff Retirement Systems referred to the "lived with" requirement as allowing benefits to recognized natural children "when they have been . . . living with the parent in a regular parent-child relationship." H. R. Doc. No. 402, 89th Cong., 2d Sess., 41 (1966). This language might appear to be inconsistent with our construction of the "lived with" requirement. The language was formulated by the Executive Branch, however, not by Congress, and at most simply reflects the Civil Service Commission's interpretation of the statute.

[10] We recognize that the Civil Service Commission has interpreted the "lived with" requirement to be a "living with" requirement, although the Government does not inform us whether the agency interpretation was contemporaneous with the 1956 enactment. We do not disregard this evidence of the meaning of the statute. See, *e. g., Batterton* v. *Francis,* 432 U. S. 416, 425, n. 9 (1977). In view of our analysis of the statute and its legislative history, and considering the need to avoid unnecessary con-

the construction is necessary to avoid a serious constitutional question. By so holding, we do not believe that we are creating undue administrative difficulties for the Civil Service Commission. In this case, for example, the Commission relied on the Montana court's paternity decree and affidavits concerning when the appellee's children lived with the deceased employee. Similar documentary evidence would be equally probative of whether an illegitimate child claiming a survivors' annuity had ever lived with the deceased employee in a regular parent-child relationship.[11]

The judgment of the Court of Claims is

*Affirmed.*

MR. JUSTICE POWELL, with whom THE CHIEF JUSTICE joins, concurring in the judgment.

The question in this case is whether the illegitimate children of a federal employee, who lived with his children after their birth and had a legal obligation to contribute to their support until his death, are eligible to receive survivors' benefits under the Civil Service Retirement Act, 5 U. S. C. § 8331 *et seq.* The statutory definition of "child" under that Act includes a "recognized natural child who lived with the employee . . . in a regular parent-child relationship." 5 U. S. C. § 8341 (a) (3)

---

stitutional adjudication, however, the agency interpretation would not be decisive even if it were contemporaneous.

[11] Because we hold that the Civil Service Retirement Act expressly allows the appellee's children to receive survivors' annuities, there is no question that the Court of Claims below had both jurisdiction to entertain their claims and authority to grant recovery. See *United States* v. *Testan,* 424 U. S. 392, 397–398 (1976); *Eastport S. S. Corp.* v. *United States,* 178 Ct. Cl. 599, 606–607, 372 F. 2d 1002, 1007–1009 (1967). In light of our holding, we need not address the Government's argument that the Court of Claims exceeded its jurisdiction when it declared 5 U. S. C. § 8341 (a) (3) (A)'s "lived with" requirement unconstitutional, severed that requirement from the statute, and awarded relief to the appellee's children based on the remaining language in the statute. Cf. *United States* v. *Testan, supra.*

(A) (ii). Because I agree that these children satisfy the statutory definition, I concur in the judgment of the Court. I write separately because I do not believe that the Court's broad construction of the "lived with" requirement is compatible with congressional intent or necessary to avoid constitutional difficulties.

The Court recognizes that the "lived with" requirement could serve governmental purposes by providing proof of either paternity or dependence. The Court concludes that the "lived with" requirement is not designed to prove paternity because the statute separately requires that an eligible illegitimate be a "recognized natural child." *Ante,* at 30. I agree.

I cannot accept so easily the Court's further conclusion that the "lived with" requirement was not designed to prove dependency. Although the 1966 amendment demonstrates that the "lived with" requirement cannot be interpreted to demand that more than one-half of a child's support come from the deceased parent, it does not demonstrate that Congress intended to eliminate entirely the dependency requirement. As a matter of statutory construction and common sense, the statement that an illegitimate who fulfills the "lived with" requirement need not meet an additional dependency requirement, *ante,* at 32, quoting H. R. Doc. No. 402, 89th Cong., 2d Sess., 41 (1966), indicates that Congress intended the "lived with" test to serve as the functional equivalent of a dependency requirement. The Court's assumption to the contrary deprives the "lived with" requirement of any legislative purpose. Rather than construe a statutory provision to serve no identifiable congressional goal, I would conclude that Congress intended the "lived with" requirement to serve as a means through which illegitimate children may prove actual dependency on the deceased parent.

Congress may require illegitimate children to demonstrate actual dependency even though legitimate children are presumed to be dependent, *Mathews* v. *Lucas,* 427 U. S. 495, 507–509 (1976), so long as the means by which illegitimates

must demonstrate such dependency are substantially related to achievement of the statutory goal. *Lalli* v. *Lalli,* 439 U. S. 259, 275–276 (1978) (opinion of POWELL, J.) ; see *Trimble* v. *Gordon,* 430 U. S. 762, 770–773 (1977). The possible constitutional infirmity in the Government's construction of the statute is its assumption that only illegitimates who "lived with" a parent at the time of his death were actually dependent. Such a requirement may be unconstitutionally restrictive because, as in this case, it would bar the claims of children who lived with their father for some part of their lives, and who received support from their father until his death.*

The recognition of the children's claim in this case clearly does not frustrate the congressional intent that only dependent illegitimate children receive survivors' annuities. I therefore would hold that children who show a continuing relationship of dependency with their father, which includes living with him in the past and receiving support from him when they lived apart, satisfy the requirement of 5 U. S. C. § 8341 (a)(3)(A)(ii). I do not believe, however, that the Court needs to find the requirement satisfied no matter when the child lived with the deceased parent. In some circumstances proof of a domestic living situation at some far distant period in the child's life may not demonstrate actual dependency. Accordingly, I would go no further than concluding that these children have satisfied the "lived with" requirement.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE STEWART joins, dissenting.

I am in full agreement with the Court that the statutory question should have been resolved in this case prior to any application of the constitutional issue decided by the Court

---

*I believe that the Court errs in assuming that its broad interpretation of the "lived with" requirement will always avoid constitutional difficulty. The imposition of the "lived with" requirement as a test of actual dependency may be unconstitutional in a case in which a father had always supported, but never lived with, an illegitimate child.

of Claims in *Gentry* v. *United States,* 212 Ct. Cl. 1, 546 F. 2d 343 (1976). Nor do I disagree with the Court's construction of the statute in issue. I dissent, however, because I believe that the Court should remand the case to the Court of Claims for consideration of the statutory claim in the first instance.

Federal courts should not, of course, resolve cases on the basis of constitutional questions when a nonconstitutional ground might be available. A federal court also may not award relief on the basis of a constitutional decision absent jurisdiction conferred by Congress. When a federal court violates either of these prudential or jurisdictional limitations, our standard practice is to remand the case for consideration of the statutory question. In *Youakim* v. *Miller,* 425 U. S. 231 (1976), this Court found that a constitutional holding of a lower court might possibly be avoided by the construction of statutory requirements. The Court remanded, finding that the statutory issue might be dispositive, "but that the claim should be aired first in the District Court. Vacating the judgment and remanding the case for this purpose will require the District Court first to decide the statutory issue, . . . and if appellants prevail on that question, it will be unnecessary for either the District Court or this Court to reach the equal protection issue at all." *Id.,* at 236. See also *Wyman* v. *Rothstein,* 398 U. S. 275 (1970); *Alma Motor Co.* v. *Timken-Detroit Axle Co.,* 329 U. S. 129 (1946). In *Richardson* v. *Morris,* 409 U. S. 464 (1973), the District Court decided a constitutional question under an erroneous assumption of Tucker Act jurisdiction, and this Court found it necessary to remand the case so that the District Court could determine what other permissible grounds of decision may have been open to it.

The Court of Claims in this case was wrong in resolving this case on the basis of its constitutional holding, both as a matter of prudential considerations as well as jurisdiction. See *United States* v. *Testan,* 424 U. S. 392, 397–398 (1976). While the Court of Claims did have jurisdiction to entertain the statu-

38

tory question presented in this case, we should have permitted it the opportunity to exercise that jurisdiction. Only this Term, we remanded a case to the Court of Claims for consideration of an issue not resolved by that court. *Hatzlachh Supply Co.* v. *United States,* 444 U. S. 460 (1980). By remanding here, we would conform the disposition of this case to our customary practice which recognizes the usefulness of district and appellate court opinions on the questions ultimately reviewed here, as well as the need to reserve this Court's plenary consideration for questions still warranting final decision here after decision by another court.